KELLY, Judge.
This case involves a boating accident on Big Bay Lake in Hillsborough County. J.S.G. was operating a boat on the lake when he struck and severely injured an individual who was floating in the water. When the accident occurred, J.S.G. was pulling a wakeboarder behind the boat. According to J.S.G., he saw in his rearview mirror that the wakeboarder had fallen. He turned to look backwards for two to three seconds to verify that the wake-boarder was down and then checked his path to prepare to turn and retrieve him. As he turned, he heard a thump and a scream. In contrast, the victim testified that as the boat approached him he saw J.S.G. looking backwards watching the wakeboarder perform tricks. When the boat was 200 yards away, he began to yell and wave his arms in an attempt to get J.S.G.’s attention.
The State charged J.S.G. with culpable negligence resulting in serious personal injury in violation of section 784.05(2), Florida Statutes (2003), and with failing to comply with Navigation Rule 5, 33 U.S.C. § 2005, resulting in a boating *189 accident, which is a second-degree misdemeanor under section 327.33(3)(a), Florida Statutes (2003). The trial court found J.S.G. not guilty of culpable negligence, but guilty under section 327.33(3)(a). In this appeal, J.S.G. challenges the sufficiency of the evidence to support the trial court’s determination of guilt.
Section 327.33(3) provides that “[e]ach person operating a vessel upon the waters of this state shall comply with the navigation rules.” The navigation rules are defined in section 327.02(23), Florida Statutes (2003), as the Inland Navigational Rules Act of 1980, 33 U.S.C., §§ 2001 et seq., as amended, for boating activity not regulated by the International Navigational Rules Act of 1977. Section 327.33(3)(a) provides that a “person whose violation of the navigation rules results in a boating accident ... is guilty of a misdemeanor of the second degree.” The State alleged that J.S.G. failed to maintain a proper lookout as required by Rule 5, resulting in a boating accident. Rule 5 mandates that “[e]very vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.” 33 U.S.C. § 2005.
J.S.G. first argues that the State did not prove a violation of Rule 5 because that rule only applies to ship collisions and, further, because it does not apply to pleasure craft. These contentions are refuted by the plain language of the statute. Section 327.33(3) provides that each person operating a “vessel” shall comply with the navigation rules. The statute does not exclude pleasure craft. Section 327.02(2) defines a “boating accident” as “a collision, accident, or casualty involving a vessel in or upon ... the water.” This definition does not limit a “boating accident” to a collision between vessels.
J.S.G. points to the fact that the purpose of the Inland Navigational Rules Act of 1980 was to prevent “ship collisions,” citing S.Rep. No. 96-979, at 1 (1980), as reprinted in 1980 U.S.C.C.A.N. 7068. He maintains that he could not have violated the navigation rules because his boat did not collide with another boat. What J.S.G. fails to appreciate is that the navigation rules are operational rules. Although their purpose may be to prevent ship collisions, they nevertheless constitute the “rules of the road” for vessels, just as traffic regulations govern the conduct of motor vehicles on land. Section 327.33(3) mandates that boaters comply with the “rules of the road” when traveling on the waters of this state. Thus, the issue in this case is whether J.S.G. operated his boat in compliance with the rules.
J.S.G. also argues that Rule 5 cannot apply to pleasure craft because it requires someone other than the vessel’s operator to act as a lookout. Although cases interpreting the lookout requirement “waiver between the function of looking out and the person designated as the lookout ... the text of Rule 5 focuses on the function, rather than the person or persons performing it.” Craig H. Allen, Farwell’s Rules of the Nautical Road 131 (Naval Institute Press, 8th ed. 2005). The rule is applied to pleasure craft with a one-man crew, and in those instances, “the focus is on the lookout function and whether it is carried out in a manner that provides the person directing the movement of the vessel with a full and timely appraisal of the situation and the risk of collision.” Id. at 141. Moreover, J.S.G.’s expert acknowledged that J.S.G. had a duty to maintain a proper lookout in accordance with Rule 5.
J.S.G. next contends that the evidence failed to establish that he violated Rule 5. The State’s expert in the field of maritime navigation rules and procedures testified that Rule 5 requires a good lookout by *190 using all available means. He concluded that when J.S.G. looked backward to verify that his wakeboarder had been dropped, despite having a mirror for that purpose, he did not use all available means to maintain a good lookout.
J.S.G.’s expert concluded that J.S.G. had maintained a proper lookout under the circumstances. He opined that other factors beyond J.S.G.’s control contributed to the accident. Those factors included the choppy water, the dark life jacket worn by the victim, and the dark murky water itself. He opined that proper operation of a vessel requires that the operator be aware of the status of his skier and that, even though he had a mirror, it would have been negligent for J.S.G. to not look toward the back of his vessel to ascertain that his wakeboarder was down and to check his path before turning to retrieve him. Critically, he acknowledged that in reaching his opinion he had not taken into account the victim’s version of events because he felt it was not credible. He testified that if the victim’s account was accurate, then he would have to conclude that J.S.G. had not maintained a proper lookout.
In the face of conflicting evidence, the adequacy of the lookout is for the finder of fact to determine. See Anthony v. Int’l Paper Co., 289 F.2d 574 (4th Cir.1961). Here, the trial court considered the testimony of witnesses and experts, determined that the victim’s testimony was accurate, and concluded that J.S.G. failed to maintain a proper lookout causing a boating accident. Because the record supports the trial court’s conclusion, we affirm.
Affirmed.
CASANUEVA and DAVIS, JJ., Concur.